Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| IN RE:<br><br>MUNICIPIO AUTÓNOMO DE CAROLINA<br><br>Recurrente | TA2025RA00299 | *Revisión Administrativa* procedente del Departamento de Recursos Naturales y Ambientales<br><br>Sobre: Intención de Renovar Permiso de Operación para Instalación de Desperdicios Sólidos No Peligrosos (Sistema de Relleno Sanitario de Carolina)<br><br>Caso DRNA Núm. IDF-16-0019 |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de marzo de 2026.

La parte recurrente, Caribbean Golf Academy, INC., y Hacienda Campo Rico, INC., comparece ante nos para que revisemos la *Resolución y Notificación* emitida por el Departamento de Recursos Natrales y Ambientales (en adelante, DRNA) el 21 de agosto de 2025 y notificada el 22 de agosto de 2025. Mediante el referido dictamen, el DRNA renovó el Permiso de Operación Núm. IDF-16-0019, para el Sistema de Relleno Sanitario solicitado por el Municipio Autónomo de Carolina.

Por los fundamentos que expondremos a continuación, se desestima el presente recurso de revisión judicial, por falta de jurisdicción.

**I**

Surge del expediente que el 23 de febrero de 2024, el Municipio Autónomo de Carolina presentó ante el Departamento de

Recursos Naturales y Ambientales una solicitud de renovación del Permiso de Operación Núm. IDF-16-0019, para la operación del sistema de relleno sanitario.

Posteriormente, el 29 de noviembre de 2024, el DRNA publicó en el periódico El Nuevo Día, un *Aviso Público Ambiental* mediante el cual notificó su intención de emitir el referido permiso, así como la disponibilidad del Borrador de Permiso. Más adelante, el 26 de mayo de 2025, el DRNA publicó en el periódico Primera Hora, un *Aviso de Vista Pública* mediante el cual convocó a la ciudadanía a comparecer a la audiencia pautada para el 30 de junio de 2025.

Luego de varias incidencias procesales innecesarias de pormenorizar, en la fecha antes indicada, el DRNA celebró la vista pública con el propósito de recibir comentarios y recomendaciones de residentes y público en general. La misma fue presidida por el Oficial Examinador, Luis González Ortiz. Según surge del expediente administrativo ante nuestra consideración, durante dicha vista se presentaron cuatro ponencias. En apoyo a la renovación del permiso en controversia, fungieron como ponentes, el alcalde del Municipio Autónomo de Carolina, José Carlos Aponte Dalmau; la entidad Landfill Gas Technologies Corp.; y el señor Bernabé Andrade Rodríguez. En oposición, compareció como ponente, la entidad Caribbean Golf Academy, Inc. Concluida la vista pública, el Oficial Examinador concedió un término adicional de veinte días para la presentación de comentarios suplementarios, los cuales fueron oportunamente sometidos.

Evaluados los planteamientos de las partes, el 14 de agosto de 2025, el Oficial Examinador emitió su *Informe*. Mediante este, recomendó al Secretario del DRNA la aprobación de la renovación del permiso solicitado.

El 21 de agosto de 2025, notificada y archivada en autos al día siguiente, el Subsecretario del DRNA, Nelson Cruz Santiago,

emitió una *Resolución y Notificación* mediante la cual aprobó la renovación del permiso de operación para el Sistema de Relleno Sanitario del Municipio Autónomo de Carolina, Núm. IDF-16-0019. Consecuentemente, ordenó a la División de Cumplimiento de Desperdicios No Peligrosos de la agencia a emitir el correspondiente permiso. Como parte de la referida resolución, se apercibió a la parte adversamente afectada de su derecho a reconsiderar ante la agencia y a solicitar la revisión judicial de tal resolución ante este Tribunal, de conformidad con la Secciones 3.15 y 4.2 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, 3 LPRA secs. 9655 y 9672.

Inconforme, el 11 de septiembre de 2025, la parte recurrente presentó una *Solicitud de Reconsideración*. Sin embargo, el 17 de septiembre de 2025, notificada y archivada en autos el 19 de septiembre de 2025, el DRNA emitió una *Resolución* mediante la cual declaró *"No Ha Lugar"* la solicitud de reconsideración presentada por la parte recurrente.

Aun inconforme, el 20 de octubre de 2025, la parte recurrente compareció ante nos mediante la presentación del recurso de revisión administrativa. En el mismo, señala la comisión de los siguientes errores:

> Erró el DRNA al aprobar la renovación del permiso de operación del vertedero del Municipio Autónomo de Carolina mediante Resolución que, al igual que el Informe en que se basa, carece de determinaciones de hecho y conclusiones de derecho.

> Erró el DRNA al no nutrir su proceso decisional de renovación del permiso de operación del vertedero y tener disponible para la vista pública una Declaración de Impacto Ambiental que describa y considere, entre otros, la ubicación y origen del vertedero, el impacto de la expansión, nunca explícitamente divulgada y considerada por la recurrida, hacia terrenos cársicos y terrenos adquiridos y descritos a las agencias reguladoras como que servirían de zona de amortiguamiento entre el vertedero y terrenos al norte.

> Erró el DRNA al ser el subsecretario y no el secretario quien dictó las Resoluciones aprobando la renovación

del permiso de operación del vertedero del Municipio Autónomo de [Carolina] y denegando la Solicitud de Reconsideración de la recurrente.

Por su parte, el 18 de noviembre de 2025, el DRNA compareció ante este Foro mediante un *Escrito en Cumplimiento de Orden y Solicitud de Desestimación*. En síntesis, sostuvo que la notificación de la *Resolución y Notificación* emitida el 21 de agosto de 2025, adolecía de un apercibimiento defectuoso al incorporar el texto íntegro de la Sección 3.15 de la Ley Núm. 38-2017, *supra*, disposición aplicable a procedimientos adjudicativos formales. A su juicio, dicha inclusión resultaba incompatible con el proceso de concesión de permisos y tuvo el efecto de impedir la activación adecuada del procedimiento administrativo de impugnación del permiso otorgado. En consecuencia, adujo que, ante la falta de una notificación válida, el término para acudir en revisión judicial no comenzó a transcurrir. A base de ello, solicitó la desestimación del recurso por falta de jurisdicción y que se le permita subsanar la notificación defectuosa, a los fines de que comience a transcurrir el término correspondiente para instar la impugnación administrativa del permiso concedido.

Procedemos a expresarnos a tenor con la norma aplicable al correcto trámite de la presente causa.

## II

## A

En Puerto Rico, el proceso de renovación de un permiso de operación de un sistema de relleno sanitario se encuentra regulado por el Reglamento Núm. 9306 del 7 de septiembre de 2021, mejor conocido como Reglamento para los Sistemas de Relleno Sanitario (en adelante, Reglamento 9306). Este fue aprobado al amparo de *la Ley sobre Política Pública Ambiental*, Ley Núm. 416-2004, según enmendada, 12 LPRA sec. 8001 *et seq.*, y de la *Ley de Procedimiento*

*Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.*

En lo pertinente, el Reglamento 9306 establece que las solicitudes de renovación de permisos de operación de sistemas de relleno sanitario están sujetas a mecanismos de participación pública, incluyendo la celebración de vistas públicas. A tales efectos, la Regla 159 dispone que el Departamento de Recursos Naturales y Ambientales podrá celebrar una Vista Pública, ya sea *motu proprio* o a solicitud de parte interesada, previa la correspondiente notificación al público y con acceso a la documentación relacionada con la solicitud. Ahora bien, conforme surge del inciso E de la referida Regla 159, la Vista Pública tiene un carácter **estrictamente investigativo**, dirigido a recopilar información y escuchar los planteamientos de los participantes para la eventual determinación administrativa sobre la solicitud de permiso.

Por su parte, la Regla 148 del Reglamento 9306, intitulada *Procedimiento y toma de decisiones sobre los permisos*, dispone que la determinación del Departamento de Recursos Naturales y Ambientales deberá ser notificada con los apercibimientos que en derecho procedan, conforme a la Ley Núm. 38-2017, *supra.* En ese contexto, la Sección 5.4 de la Ley Núm. 38-2017, 3 LPRA 9684, establece que toda persona a la que una agencia deniegue la concesión de una licencia, franquicia, permiso, endoso, autorización o gestión similar tiene derecho a impugnar la determinación de la agencia mediante un procedimiento adjudicativo. No obstante, aunque el texto de la referida disposición alude expresamente a la denegatoria, nuestro Tribunal Supremo precisó en *Claro TV y Junta Regl. Tel. v. One Link*, 179 DPR 177, 207 (2010), que "el procedimiento adjudicativo está disponible luego de que la agencia determina otorgar o denegar una licencia, permiso o franquicia tanto

para los solicitantes a quienes se les denegó dicha autorización como para terceros que interesen impugnar lo concedido por la agencia".

**B**

Por otro lado, es por todos sabido que los tribunales de justicia deben ser celosos guardianes de su jurisdicción, estando obligados a considerar tal asunto aún en defecto de señalamiento del mismo. *Freire Ruiz et al. v. Morales, Hernández,* supra; *Oficina de Ética Gubernamental v. Santini Padilla,* 209 DPR 332, 339 (2022); *Mun. De San Sebastián v. QMC Telecom,* 190 DPR 652, 660 (2014); *Moreno González v. Coop. Ahorro Añasco,* 177 DPR 854, 859 (2010); *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873, 882 (2007). Las cuestiones relativas a la jurisdicción son de carácter privilegiado y las mismas deben resolverse con preferencia a cualesquiera otras. *Mun. Río Grande v. Adquisición Finca,* 2025 TSPR 36, 215 DPR ___ (2025); *Freire Ruiz et al. v. Morales, Hernández,* supra; *JMG Investment, Inc. v. ELA,* 203 DPR 708, 714 (2019); *Torres Alvarado v. Madera Atiles,* 202 DPR 495, 500 (2019); *Ríos Martínez, Com. Alt. PNP v. CLE,* 196 DPR 289, 297 (2016). La falta de jurisdicción no es susceptible de ser subsanada y, ante lo determinante de este aspecto, los tribunales pueden considerarlo, incluso, *motu proprio. Rodríguez Vázquez v. Hosp. Auxilio Mutuo,* 2025 TSPR 55, 216 DPR ___ (2025); *MCS Advantage, Inc. v. Fossas Blanco,* 211 DPR 135, 145 (2023); *Mun. De San Sebastián v. QMC Telecom,* supra, pág. 660.

En el anterior contexto y relativo a la causa que nos ocupa, la doctrina vigente establece que un recurso prematuro, al igual que uno tardío, adolece del grave e insubsanable defecto de falta de jurisdicción del tribunal al que se recurre. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008); *Juliá, et als v. Epifanio Vidal, SE,* 153 DPR 357, 366 (2001). Un recurso que se presenta antes de tiempo a la consideración del foro apelativo carece de eficacia jurídica y no produce efecto jurídico alguno, por lo que no puede

atenderse en sus méritos. *Juliá, et als v. Epifanio Vidal, SE,* supra. De igual forma, el foro intermedio está impedido de acogerlo y de conservarlo con el propósito de reactivarlo posteriormente mediante una moción informativa. *Íd.*, pág. 367.

En lo pertinente, la *revisión judicial* constituye el remedio exclusivo para auscultar los méritos de una determinación administrativa. Conforme lo dispuesto en la Sección 4.2 de la Ley 38-2017:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.
> [...]
> Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia.
> [...].

3 LPRA sec. 9672.

Por su parte, la Regla 56 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 141, pág. 80, 216 DPR __ (2025), arroga a este Foro competencia para revisar las determinaciones emitidas por un organismo administrativo. Sin embargo y cónsono con lo dispuesto en el estatuto antes esbozado, resulta medular que la parte interesada recurra de un pronunciamiento agencial final que plantee una controversia legítima.

**III**

Luego de examinar el recurso ante nuestra consideración, concluimos que carecemos de jurisdicción para atenderlo. Ello responde a que la determinación cuya revisión se solicita no constituye una determinación final revisable conforme a nuestro ordenamiento, toda vez que no ha sido producto del procedimiento adjudicativo dispuesto en la Ley Núm. 38-2017, *supra.*

Según esbozáramos previamente, el proceso de evaluación y concesión de permisos de operación de sistemas de relleno sanitario es uno de carácter investigativo, el cual no adjudica derechos u obligaciones entre partes adversas. La celebración de una vista pública como parte del proceso de evaluación para la renovación de un permiso de operación constituye meramente un mecanismo para recopilar información y auscultar los planteamientos de los participantes, sin que ello active ni sustituya un procedimiento adjudicativo. Es únicamente una vez la agencia determina otorgar o denegar el permiso solicitado que se activa el procedimiento adjudicativo correspondiente, mediante el cual terceros con un interés legítimo puedan comparecer y hacer valer sus derechos dentro de un proceso formal adjudicativo que les garantice una notificación adecuada del proceso, la oportunidad de presentar evidencia, el derecho a contrainterrogar testigos, contar con la asistencia de abogado y obtener una determinación basada en el expediente administrativo.

En el caso ante nuestra consideración, conforme surge de la comparecencia del propio DRNA, la *Resolución y Notificación* emitida por la agencia adolece de defectos en sus apercibimientos, al incorporar de forma literal las disposiciones de la Sección 3.15 de la Ley Núm. 38-2017, *supra.* Tal deficiencia, reconocida por la propia agencia, impidió la activación efectiva del procedimiento adjudicativo correspondiente. Es importante destacar que, la vista

pública no constituyó un proceso adjudicativo formal, sino fue celebrada con el propósito de recibir comentarios y recomendaciones de residentes y público en general. Consecuentemente, la parte recurrente pretendió la revisión judicial de una determinación que no es final, ni producto de un procedimiento adjudicativo que pueda ser revisada por este Foro.

Por consiguiente, ante la ausencia de una determinación final revisable, procede desestimar el recurso por falta de jurisdicción. Corresponde devolver el asunto al Departamento de Recursos Naturales y Ambientales para que emita una notificación conforme a derecho, con los apercibimientos correctos en cuanto al mecanismo y término para impugnar la renovación del permiso en controversia, a fin de que la parte recurrente pueda activar el procedimiento adjudicativo correspondiente y ejercer plenamente las garantías mínimas del debido proceso de ley.

**IV**

Por los fundamentos que anteceden, se desestima el presente recurso de revisión judicial.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
